JL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sukhdev Sukhdev,<br><br>          Petitioner,<br><br>v.<br><br>Pamela Bondi, et al.,<br><br>          Respondents. | No.   CV-26-00329-PHX-SHD (ASB)<br><br>**ORDER** |

Petitioner filed this action under 28 U.S.C. § 2241 challenging his immigration detention (Doc. 1). Petitioner alleged that he entered the United States in May 2024 to seek asylum. (*Id.* ¶ 43.) Petitioner alleged he was released with an Employment Authorization Document and was scheduled to appear at the Immigration Court for a Master Hearing. (*Id.* ¶ 47.) Petitioner alleged that he was re-detained in November 2025 and had a bond hearing in December 2025, at which bond was denied. (*Id.* ¶¶ 48-49.) The Court directed Respondents to answer the Petition and permitted Petitioner to file a reply. (Doc. 3.) Upon review of the briefing, the Court will grant the Petition and direct Petitioner's immediate release from custody.

**I.**    **Background**

Petitioner Sukhdev is a native and citizen of India. (Doc. 1 ¶ 18.) Petitioner entered the United States on May 15, 2024, and was apprehended by immigration officials the same day. (*Id.* ¶ 43.) Petitioner was placed into expedited removal proceedings and sought asylum shortly after his arrival. (*Id.* ¶¶ 44, 46.) Immigration officials referred him for a

1  credible fear interview with an asylum officer.  (Doc. 4-2.)  An asylum officer determined
2  that Petitioner had demonstrated a credible fear of persecution or torture, and on June 15,
3  2024, Petitioner was placed into full removal proceedings for further evaluation of his
4  asylum claim. (Doc. 4-3.)  On June 23, 2024, Petitioner was paroled into the United States.
5  (Doc. 4-1.)  On July 3, 2024, Petitioner was served with a Notice to Appear.  (Doc. 4-3.)

6  Petitioner was re-detained on November 9, 2025.  (Doc. 1 ¶ 48.)  On December 12,
7  2025 an Immigration Judge denied Petitioner's request for release on bond.  (*Id.* ¶ 49.)  An
8  Immigration Judge ordered Petitioner removed to India on January 5, 2026, and both
9  parties reserved appeal.  (Doc. 4-2.)

**II.    Discussion**

Petitioner asserts he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), and the application of § 1225(b)(2) to him unlawfully mandates his continued detention and violates 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.  (Doc. 1 ¶¶ 53-57, 61.) Petitioner further contends his detention violates his rights under the Due Process Clause of the Fifth Amendment.  (*Id.* ¶¶ 73-83.)

In response, Respondents argue that "as an alien placed into expedited removal proceedings under Section 1225(b)(1) whom an asylum officer has found to have a credible fear of persecution, Petitioner is subject to detention not under Section 1226(a), but under Section 1225(b)(1)(B)(ii), and that statute does not permit Petitioner's release on bond." (Doc. 4 at 3.)  Respondents contend that § 1225(b)(1)'s mandatory detention does not violate the Due Process Clause. (*Id.* at 4.)  Respondents further assert that they complied with regulatory requirements for revoking Petitioner's parole because Petitioner was served with a Notice to Appear placing him in removal proceedings, which automatically terminated his parole.  (*Id.*)  Respondents contend that even if Petitioner prevails, "he is properly entitled to a bond hearing, not release without conditions."  (*Id.* at 6.)

Respondents do not address whether Petitioner's release on parole in June 2024 created a liberty interest in his release.  This omission is significant because recent cases confirm an immigration detainee released on parole retains a liberty interest in his release

and that "liberty interest [does] not expire along with his parole." *Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted . . . . That the express terms of the [§ 1182] parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide a [sic] individualized bond hearing prior to re-detaining the parolee."); *Mody v. Warden*, No. 25-cv-03400-FMO, 2026 WL 51976, at *6 (C.D. Cal. Jan. 5, 2026) (issuing temporary restraining order where petitioner had been re-detained following expiration of his § 1182 parole); *Quiroga-Chaparro v. Warden of the Golden State Annex Detention Fac.*, No. 25-cv-01731-AC, 2025 WL 3771473, at *4–5 (E.D. Cal. Dec. 31, 2025) (same); *Ramirez v. Wamsley*, No. 2:25-cv-01723-KKE-TLF, 2025 WL 3288295 (W.D. Wash. Nov. 25, 2025) (directing immigration detainee's immediate release after he was re-detained following his parole's expiration, stating petitioner's "interest in his freedom is constitutionally protected" and that "the Government exercises discretion in determining whether to grant parole or extend it upon its expiration does not eliminate the protections afforded to Petitioner's liberty interest").

Thus, even if, as Respondents argue, the Notice to Appear automatically revoked Petitioner's parole, that does not end the Court's inquiry. Under § 1182(d)(5)(A), a petitioner's "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Parole "shall not be regarded as an admission of the alien," § 1182(d)(5)(A); thus, noncitizens released on parole remain applicants for admission after their parole ends. The United States District Court for the Western District of Kentucky recently determined that § 1226(a) applies where "a petitioner's re-arrest was not a continuation of the initial border encounter, but an independent decision to detain the individual after the expiration of his parole." *Quintero v. Olson*, 2026 WL 596643, at *2

(W.D. Ken., Mar. 3, 2026) (quoting *Ivonin v. Rhoney*, No. 6:25-CV-06673 EAW, 2026 WL 199283, at *4 (W.D.N.Y. Jan. 26, 2026)).  The court rejected the government's argument that the petitioner was subject to mandatory detention under § 1225(b)(2), stating that "[n]oncitizens who remain in the United States after their parole ends are not 'arriving aliens.'" *Id.* at *3 (citing cases concluding that paroled noncitizens were not "arriving aliens").  The court concluded that the petitioner was detained under § 1226(a), not § 1225(b)(2), and was thus entitled to a bond hearing.  *Id.*

As the district court in *Quintero* recognized, "[t]he Fifth Amendment's Due Process Clause extends to all persons, including noncitizens, regardless of immigration status and in the context of removal proceedings."  *Id.* (citing *Plyler v. Doe*, 457 U.S. 202, 210 (1982)).  The Court applies the three-prong test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976), to determine if Petitioner's re-detention without a hearing violated his right to due process.  *Mathews* explains "[t]he fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  To determine whether procedural protections satisfy the Due Process Clause, courts consider three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.* at 335.

As to the first factor, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause."); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").

As to the second factor, the Court concludes there is a risk of erroneous deprivation where individuals can be re-detained without a neutral decisionmaker evaluating whether re-detention is warranted. *See Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. 2025) ("[T]he risk of erroneously depriving [Quintero] of his freedom is high if the [immigration judge] fails to assess his risk of flight and dangerousness[.]").

Finally, as to the third *Mathews* factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Further, detention hearings in immigration courts are commonplace and impose a "minimal cost." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). In addition, here, Respondents' interest is even lower because Petitioner was previously released after immigration officials determined he was not a flight risk or danger to the community. *See Pinchi v. Noem*, No. 25cv05632-RMI, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025).

The Court therefore finds that the *Mathews* factors weigh in favor of determining Petitioner was entitled to a hearing before he was re-detained. The Court finds that immediate release, rather than requiring another bond hearing, is the appropriate remedy. *See Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, 2025 WL 3314420, at *32 n.20 (E.D.N.Y. Nov. 28, 2025) ("This Court is mindful that the traditional remedy in habeas is release from illegal custody." (citing *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 107( 2020) ("Habeas has traditionally been a means to secure release from unlawful detention."))); *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 373 (S.D.N.Y. 2019) ("As Petitioner's arrest and detention were blatantly unlawful from the start, the only commensurate and appropriate equitable remedy to even partially restore [Petitioner] is to immediate release him and enjoin the Government from further similar transgressions."); *Ruiz v. Noem*, No. 3:25-CV-03536-RBM-BJW, 2025 WL 3719888, at *2 (S.D. Cal. Dec. 23, 2025) ("[G]iven Respondents' 'weighty' interest in the 'efficient administration of the immigration laws,' *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), it does not make sense to

require Respondents to set a new bond hearing before a potentially new immigration judge just to duplicate the same efforts taken at the [previous] hearing."); *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful] detention is, of course, release.").

For all these reasons, the Petition will be granted, and Petitioner will be ordered released from custody immediately.

**IT IS THEREFORE ORDERED** Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **granted** as to his due process claim in Count Four. The remainder of the Petition is denied as moot.

**IT IS FURTHER ORDERED** Respondents must immediately release Petitioner from custody under the same conditions that existed before his re-detention.

**IT IS FURTHER ORDERED** Respondents must provide a notice of compliance within two business days of Petitioner's release.

**IT IS FINALLY ORDERED** any pending motions are denied as moot and the Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 9th day of March, 2026.

_____
Honorable Sharad H. Desai
United States District Judge